## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**TIMOTHY W. MORRIS**
**and all others similarly situated**

**Plaintiffs,**

**vs.**                                    **CAUSE NO: 1:21-cv-00159-JOB-SCY**

**UNITED INTERTRADE, INC.,**
**and**
**ALBERTSON'S LLC,**

**Defendants.**

### PLAINTIFFS' SECOND AMENDED CLASS-ACTION COMPLAINT

COME NOW Plaintiffs through their counsel David C. Kramer and Michael L. Aaronson[1]

and state:

### I.        PREAMBLE

1. This is a deceptive product case involving falsely labeled ground coffee sold to consumers in New Mexico by Defendants. The coffee, called Café Don Pedro, ("the Product") is manufactured by Defendant United Intertrade ("United Intertrade") and is sold by Defendant Albertson's LLC ("Albertsons") at its grocery stores, often called "Albertson's Markets." Those facts cannot seriously be challenged[2]. Defendants have filed motions to dismiss and have even sought sanctions against Plaintiffs because Plaintiffs have the audacity to seek truth in advertising. For the reasons that follow, Defendants are each liable under New Mexico law.

---

[1] Application for *pro hac vice* admission pending or to be filed.
[2] Plaintiffs can show through affidavits and photos that Defendants sell or recently sold Café Don Pedro at seven (7) locations in New Mexico, from the Albuquerque metro area to southern New Mexico (Ruidoso).

2. Plaintiffs aver that this Court does not have subject matter jurisdiction over this dispute, because the amount in controversy to establish diversity jurisdiction is lacking, either as an individual action or under the amendments made to diversity jurisdiction made by the Class Action Fairness Act ("CAFA").  Plaintiff will be filing a motion to remand separately.

3. This Second Amended Complaint is being filed pursuant to Fed. R. Civ. P. 15 and without waiving Plaintiffs' right to seek remand. Plaintiffs also intend to seek immediate jurisdictional discovery to refute United Intertrade's statements that it does not sell its coffee in New Mexico. The facts will show that United Intertrade sells (or recently sold) the Product in at least seven (7) retail locations in New Mexico. If United Intertrade is willfully blind about where it ships large volumes of its products, that is the fault of United Intertrade.

4. Prior to filing this action, counsel for Plaintiffs sent a demand letter ("Notice Letter") to Defendant United Intertrade on August 10, 2020 and offered an in-person inspection of the products in issue to its attorney. A copy of that letter is attached hereto as *Exhibit A.*

5. As reflected in the Notice Letter, an independent laboratory conducted tests on the Product and concluded that a consumer following the brewing instructions would obtain substantially less brewed coffee than advertised on the label of the Product. The deficiency of the amount that could actually be brewed varied between 24% to 43% meaning that instead of "100 cups per can" as advertised, a consumer would actually be able to make between 76 cups to 57 cups of brewed coffee.

6. Albertson's knew or should have known of the issues with the false labeling because

2

with reasonable diligence it (1) would have in place surveillance protocols or procedures to know when a supplier is engaged in unfair and deceptive marketing, and/or (2) would have or should have binding agreements with its suppliers by which a supplier would be required to notify Albertson's of any claims related to the labeling or marketing of the products sold.

7.  Such agreements are, upon information and belief, common in the food and beverage industries particularly when a vendor or supplier is subjected to a health or safety recall.

8.  Put another way, if Alberton's failed to require its vendors to timely report a claim of false, unfair or unlawful labeling or marketing, this is the fault of Albertson's. Albertson's cannot seriously disclaim any duties to monitor or control the products that it sells and makes money from.

9.  Albertson's to date has taken the position that it has no direct or indirect control or responsibility for the products it places on its shelves for sale to the public. Such a position is both legally and morally untenable.

10. Certainly after being served with the State Court Complaint on December 23, 2020, Albertson's was on actual notice of the false labeling of the Product and after that date, Albertson's has neither withdrawn the Product from its shelves or otherwise corrected the false labeling.

11. Consistent with Fed. R. Civ. P 15(a), Plaintiffs will seek leave to file supplemental claims against Albertson's because after December 23, 2020 Albertson's could no longer claim ignorance about the false labeling on the Product. *See, e.g., Carter v. Bigelow*, 787 F.3d 1269, 1278 (10th Cir. 2015); *see also Starr v. Kober*, No. 5:13-CV-00700-F (W.D. Okla. 2016) (construing a motion to amend as a motion to file a

supplemental pleading because it added facts that occurred after the original complaint was filed). *Accord Gillihan v. Shillinger*, 872 F.2d 935, 941 (10th Cir. 1989), *overruled in part on other grounds by Clark v. Wilson*, 625 F.3d 686 (10th Cir. 2010).

12. Put another way, regardless of Albertson's carping about notice of the false labeling, after December 23, 2020, it was on clear written notice that the product it was selling throughout New Mexico was falsely labeled. Albertson's has continued to sell the product "as is" anyway.

13. There was some initial confusion about the correct photo of the actual product purchased and tested by Plaintiffs. Plaintiffs corrected this issue timely with its First Amended Complaint filed in New Mexico state court.

14. In spite of United Intertrade's assertions, there is no genuine dispute about the labels used on the Product by United Intertrade and contrary to the assertions by United Intertrade Plaintiffs did not "grab" the photos or images of the labels of the Product from third-parties such as Amazon.

## II.    **PARTIES**

14. Consumer is a New Mexico resident and purchased ground coffee sold by Defendants in New Mexico in reliance on the unfair and deceptive advertising and labeling used by (or offered by) Defendants.

15. Defendant United Intertrade, Inc., ("United Intertrade") is a Texas corporation which sells a ground coffee product to the public called "Café Don Pedro" in New Mexico through its retailer, Albertson's grocery stores. United Intertrade has not registered with the New Mexico Secretary of State as a foreign corporation to engage in business in New Mexico nor has United Intertrade identified a registered

agent in New Mexico for service of process. United Intertrade is engaged in trade or commerce in New Mexico by, among other things, regularly selling its goods to New Mexico consumers.

16. Albertson's LLC ("Albertson's") is a Delaware corporation, and engages in trade or commerce in New Mexico through its operation of numerous grocery stores in New Mexico. Albertson's has registered to do business in New Mexico and also regularly conducts business in New Mexico including the sales of goods to the public. Consumer purchased the Café Don Pedro coffee from an Albertson's store. Albertsons has offered and still offers Café Don Pedro coffee for sale in its stores. Some locations of Alberton's may be owned or operated by United Family, Inc. or United Foods, LLC which may be a subsidiary or affiliate of Albertson's LLC.

### III.    FACTS COMMON TO ALL COUNTS

17. United Intertrade manufactures and sells to the public Café Don Pedro ground coffee, which is sold in a can.

18. United Intertrade has its primary offices in Houston, Texas.

19. United Intertrade has partnered with Albertson's stores to sell Café Don Pedro coffee to New Mexico residents.

20. Consumer is an individual consumer over the age of eighteen (18) who resides in New Mexico.

21. In July, 2020, Consumer purchased one can of Café Don Pedro 100% Arabica American Roast Ground Coffee, net weight of 11.5 ounces ("Product" or "the Product") sold at an Albertson's Market, located at 721 Mechum Drive, Ruidoso, New Mexico.

22. Also in July, 2020, Consumer purchased one (1) canister of the Product at a Thriftway store or market, located at 304 Mechem Drive, Ruidoso, New Mexico. Thriftway is not a party.

23. Consumer does not posses the receipts for these July, 2020 purchases.

24. On September 20, 2020, Consumer purchased one (1) can of the Product at the Albertson's at 721 Mechum Drive in Ruidoso, New Mexico. Consumer has the receipt for that purchase.

25. The advertising and labeling of the Product purchased by Consumer was prepared or approved by United Intertrade[3] and was disseminated by Defendants to the public.

26. As set forth herein, the advertising and labeling of the Product is materially misleading and deceptive.

27. The advertising and labeling of the Product were designed to encourage consumers to purchase the Product and reasonably misled consumers, including Consumer, into purchasing the Product.

28. By creating and distributing unfair and deceptive labels on the Product, United Intertrade is liable for violations of the New Mexico Unfair Practices Act ("UPA"), NMSA 1978, § 57-12-1, *et seq.*

29. United Intertrade holds out to the public that it is the "one and only" manufacturer of the Product. See the "Our Story" page from United Intertrade's own website as of March 10, 2021 attached hereto as *Exhibit B.*

---

[3] United Intertrade has asserted that it has no agreements with any retailers or distributors to sell the Product in New Mexico. *See* Affidavit of Bob Ajouz submitted to the Court on 2/24/2021, **Doc. 1-3**. While this could potentially technically be true, the fact that United Intertrade's products are sold widely in New Mexico reasonably supports the conclusion that either United Intertrade is willfully ignorant about where its products are sold or is reckless about where it sells its products. Plaintiffs intend to seek the determination of the Court as to whether the Ajouz affidavit was misleading, deceptive or submitted in bad faith.

30.     United Intertrade thus cannot seriously contend that its products are not sold in New Mexico because (1) at least seven stores sell the Product in New Mexico and (2) United Intertrade is literally the only manufacturer of the Product.

31.     As set forth herein, United Intertrade's labeling on the Product substantially inflates the number of cups of coffee that each can of the Product can actually brew or produce.

32.     On or about August 10, 2020, Consumer, through counsel, notified United Intertrade in writing that the labeling and advertising on the Product was deceptive and unlawful.

33.     United Intertrade should have timely alerted all of its retailers or distributors, including Albertson's, that the Product was alleged to be deceptively labeled.

34.     Consumer provided independent information confirming that the labeling on the Product was grossly and materially inaccurate and deceptive.

35.     Upon information and belief, United Intertrade did not alter or amend its deceptive advertising or labeling used on the Product after receiving notice of the deceptive nature of the labeling and advertising.

36.     Therefore, because United Intertrade has notice of the unlawful nature of the Product and the risk of material confusion by consumers and yet has not amended the Product, it is willfully engaged in unfair and deceptive trade practices which subjects it to treble damages under the UPA.

37.     Upon information and belief, United Intertrade did not direct Albertson's to pull the Product from its shelves or apply corrected labels to the Product. Thus, United

Intertrade was on notice of the deceptive representations and yet did nothing to cure the deceptive content of its labeling and advertising to New Mexico consumers.

38. At all times material, Defendant Albertson's was acting in the course and scope of its agency and its commercial relationship with United Intertrade, or possibly a distributor hired or retained by United Intertrade.

39. Under New Mexico law, a party that sets a misrepresentation or material omission into the stream of commerce is liable for all down-stream sales of those products. *Lohman v. Daimler Chrysler Corp.*, 2007-NMCA-100, ¶ 30, 142 N.M. 437.

40. Because Albertson's has allowed United Intertrade to continue to make unfair and deceptive representations of the Product to the public, it is liable for setting these false or deceptive statements into the stream of commerce to consumers.

41. Because the UPA has no "intent to deceive" requirement, Albertson's is liable for violations of the UPA by knowingly selling the Product to the public when the Product carries deceptive and misleading statements on its labeling or packaging.

42. Albertson's has advanced an argument that it was not "knowingly" selling the Product with false or deceptive labeling. However, on or after December 23, 2020, it knew or should have known of such false labeling due to service of a summons and complaint.

43. Further, Albertson's should have had protocols or procedures in place to require vendors or suppliers to notify it of claims of unfair or deceptive labeling or advertising. Failing to do so was reckless.

44. Albertson's has refused to provide any information to Plaintiffs, but even if an agreement between Albertson's and United Intertrade imposes a reporting

requirement upon United Intertrade, and if United Intertrade failed to comply with that requirement, then Albertson's can file cross-claims against United Intertrade. But this does not reduce the liability of Albertson's.

45.    Albertson's fundamentally misunderstands the Unfair Practices Act "UPA."

46.    Under the UPA, "knowingly made" is a higher standard than mere negligence. *See Robery v. Parnell*, 2017-NMCA-038, ¶ 51. But it is less than intentional. *See Ashlock v. Sunwest Bank*, 1988-NMSC-026, ¶ 5. "The 'knowingly made' requirement is met if a party was actually aware that the statement was false or misleading when made, or in the *exercise of reasonable diligence should have been aware* that the statement was false or misleading." *Stevenson v. Louis Dreyfus Corp.*, 1991-NMSC-051, ¶ 17 (emphasis added).

47.    Here, Albertson's should have had effective policies and procedures in place to know when its vendors or suppliers were accused of unlawful labeling or advertising.

48.    While people can disagree about what "reasonable diligence" means, it has to mean something more than "we don't care" which appears to be the approach of Albertson's as to the products it displays and sells to the public.

49.    In committing the wrongful and unlawful acts alleged herein, United Intertrade acted in concert with its subsidiaries, affiliates, and/or related entities and suppliers and their employees who planned and participated in the common scheme to induce members of the public to purchase the Product by use of untrue, misleading, deceptive, and/or fraudulent misrepresentations and the ongoing dissemination of those misrepresentations.

50.    Whenever reference in this Complaint is made to any act, error, or omission made by United Intertrade or its affiliates, distributors, retailers and related entities or supplies, such allegations include any and all officers, directors, agents, employees or representatives of United Intertrade.

51.    The Product is comprised of ground coffee, sold to consumers for the purpose of brewing cups of coffee for household use.

52.    The Product's label prominently states that the Product is a "Drip-Perk Grind" that is "for all coffee makers."

53.    The Product's label prominently states that the Product "**makes up to 4 gallons or 100 cups**."

54.    Photographs of the Product's (front and back) are attached hereto as *Exhibit C*.

55.    The Product's back label provides instructions on how to brew a cup of coffee which includes the statement "**use one full tablespoon of Café Don Pedro to each six ounce (6 oz.) cup of filtered water**."

56.    Based upon the prominent labeling and brewing instructions on the Product, a consumer purchasing the Product would reasonably believe that the Product could brew 100 servings of coffee.

57.    Despite the prominent packaging and labeling, which Defendants either created or approved of, the Product is not capable of brewing 100 cups (of six-ounce cups) of coffee.

58.    Since Consumer purchased the Product as a product advertising itself as being capable of brewing 100 cups of coffee (or 4 gallons of coffee), and it was not such a product, Plaintiff was damaged in proportion to the servings of coffee not

received.

59.  The Product's representations, as outlined and explained above, which are uniformly, consistently and prominently displayed on each individual package of the Products are untrue, misleading and deceive the public.

60.  Plaintiff is aggrieved by the deceptively labeled and marketed Products as he relied on the misleading and deceptive labeling and advertising and was deprived of the benefit of the bargain he reasonably anticipated from the Product labeling and advertising; specifically, he was deprived of the benefit he paid for a Product labeled and advertised as being capable of brewing 100 cups of coffee when in reality the Product could not make the promised cups of coffee.

61.  Reasonable consumers, such as the Plaintiff, will continue to be harmed by the deceptive and misleading labeling and advertising of the Product, as reasonable consumers will continue to make the plausible connection that they are purchasing a Product capable of brewing 100 cups of coffee.

62.  Upon information and reasonable belief Defendant could sell the Product without deceptive labeling by, for example, not displaying on the front label any representations about the number of cups of coffee a consumer could brew from the Product.

63.  Alternatively, Defendant could sell the Product with an accurate representation as to the number of cups of coffee that could be brewed when following the directions.

64.  Defendants unlawfully marketed, advertised, sold, and distributed the Product to New Mexico purchasers.

65.  Defendants sold the Product at a premium price, and Defendants' false and misleading representations deceived New Mexico consumers for the reasons previously alleged, above.

66.     Plaintiff has performed all conditions precedent to bringing this Action.

67.     As an immediate, direct, and proximate result of Defendants' false, misleading, and deceptive representations, Defendant injured Plaintiff and the other Class members in that Plaintiffs and other Class members:

a.     paid a sum of money for the Products that were not as represented;

b.     paid a premium price for the Products that were not as represented;

c.      were deprived the benefit of the bargain because the Products they purchased were different than what Defendants warranted;

d.     were deprived the benefit of the bargain because the Products they purchased had less value than what was represented by Defendants;

e.     did not receive Products that measured up to their expectations as created by Defendants;

f.     purchased Products that were other than what was represented by Defendants;

g.     received Products that Plaintiffs and the other members of the Class did not expect or consent to; and

h.     received Products that were of a lower quality than what Defendant promised.

68.     Had Defendants not made the false, misleading, and deceptive representations, Plaintiff and the other Class members would not have been economically injured because Plaintiff and the other Class members would not have purchased the Product or at least would have had accurate information about the value of the Product.

69.     Plaintiff and the other Class members would likely purchase the Product again if the deceptive advertising and labeling on the Product were correct.

70.     Accordingly, Plaintiff and the other Class members have suffered injury in fact and

lost money or property as a result of Defendants' wrongful conduct.

71.     Plaintiff and the other Class members did not obtain the full value of the advertised Product due to Defendants' misrepresentations and material omissions.

72.     Plaintiff and the other Class members purchased, purchased more of, or paid more for the Product than they would have done had they known the truth about the Product.

## IV.     PLAINTIFF'S ACTUAL DAMAGES

73.     Plaintiff purchased the Product in New Mexico.

74.     The Product purchased by Plaintiff was deceptively advertised and marketed for the reasons previously alleged herein.

75.     With respect to the Products, Plaintiff and members of the Class paid a price premium or received less than they bargained for, because Plaintiff and members of the Class reasonably believed the Product could be used to brew 100 coffee as specified on the label and in the advertising, and not fewer than that number of cups.

76.     Likewise, if Plaintiff and members of the Class had known that the Products could not be used to brew 100 cups of coffee specified on the label and in the advertising, they would not have purchased the Product.

77.     The Product is worth less than what Plaintiff and members of the Class paid for, and/or is not what Plaintiff and members of the Class reasonably intended to receive.

78.     Pursuant to Rule 1-023 NMRA, Plaintiff brings this class action and seeks certification of all claims and certain issues in this action on behalf of a Class defined as:

   a.   **All persons throughout New Mexico who, within the four years preceding the filing of the Complaint ("Class Period") purchased one or more containers of the Product for personal use and not for**

resale ("Class").

79.     Excluded from the Class are Defendants, their subsidiaries, affiliates, and employees; all persons who make a timely election to be excluded from the Class; governmental entities; and the Judge(s) to whom this case is assigned and any immediate family members thereof.

80.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of Plaintiff's claims on a class-wide basis using the same evidence as would be used to prove those claims in individual actions alleging the same claims.

## V.     CLASS CERTIFICATION IS APPROPRIATE

81.     The members of the Class are so numerous that individual joinder of all class members is impracticable.

82.     The precise number of members of the Class is unknown to Plaintiff, but it is clear that the number greatly exceeds the number that would make joinder practicable, particularly given Defendants' comprehensive distribution and sales network throughout New Mexico.

83.     Members of the Class may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notices.

84.     This Action involves common questions of law or fact, which predominate over any questions affecting individual members of the Class.  All members of the Class were exposed to Defendants' deceptive and misleading advertising and marketing claims alleged herein.

85.     Furthermore, common questions of law or fact include:

a.     whether Defendants engaged in the conduct as alleged herein;

b.     whether Defendants' practices violate applicable law cited herein;

c.    whether Plaintiff and the other members of the Class are entitled to actual or other forms of damages, and/or other monetary relief; and

d.    whether Plaintiff and the other members of the Class are entitled to equitable relief, including but not limited to injunctive relief.

86.    Defendants engaged in a common course of conduct in contravention of the laws Plaintiff seeks to enforce individually, and on behalf of the other members of the Class. Materially identical business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action. Moreover, the common questions will yield common answers.

87.    Plaintiff's claims are typical of the claims of the other members of the Class because, among other things, all members of the Class were comparably injured through the same uniform misconduct described herein. Further, there are no defenses available to Defendants that are unique to Plaintiffs.

88.    Plaintiff is an adequate representative of the members of the Class because Plaintiff's interests do not conflict with the interests of the other members of the Class that Plaintiff seeks to represent. Plaintiff has retained counsel competent and experienced in complex class action litigation and Plaintiff will prosecute this action vigorously. The Class' interests will be fairly and adequately protected by Plaintiff and Plaintiff's counsel. Undersigned counsel has represented consumers in a wide variety of actions where they have sought to protect consumers from fraudulent and deceptive practices.

89.    Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described herein, with respect to the members of the Class as a whole.

90.     A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other members of the Class are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for members of the Class to individually seek redress for Defendant's wrongful conduct.  Even if the members of the Class could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments; and increases the delay and expense to all parties and the court system and thereby unnecessarily clogging of the court system.

91.     New Mexico law favors the use of class actions to resolve claims over relatively small amounts of money but which could be brought on behalf of many consumers to vindicate their legal rights. *Fiser v. Dell Computer Corp*., 2008-NMSC-046, ¶ 12, 144 N.M. 464 (stating that the "**opportunity to seek class relief is of particular important to the enforcement of consumer rights because it provides a mechanism for the spreading of costs**. The class action device allows claims with individually small claims the opportunity for relief that would otherwise be economically infeasible because they may collectively share the otherwise prohibitive costs of bringing and maintaining" the claims) (emphasis added).

92.     The class action device thus presents far few case management difficulties and provides for the efficient and fair resolution in a single case. Such an action prioritizes an economy of scale and supervision by a single Court.  Given the similar nature of the member of the Class' claims and the absence of material or dispositive differences in laws upon which the claims are based, the Class can be reasonably be managed by this Court.

## FIRST CAUSE OF ACTION:
## DEFENDANTS' VIOLATIONS OF THE UPA

93.    Plaintiff re-alleges and incorporates by reference his allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein verbatim.

94.    Defendants engage in the sales of goods (the Product) within the meaning of the UPA and Defendants are engaged in trade or commerce in New Mexico.

95.    The UPA is a remedial, consumer-protection statute and is thus to be liberally applied in favor of consumers in order to effectuate the intent of the Legislature. *Maese v. Garrett*, 2014-NMCA-072, ¶ 12, 329 P.3d 713.

96.    Unlike common law fraud, the UPA does not require any showing or allegation of an intent by the seller to deceive or any proof of reliance by consumers. *Pedroza v. Lomas Auto Mall, Inc.*, 600 F.Supp.2d 122, 1208 (D.N.M. 2009). *Accord Ashlock v. Sunwest Bank of Roswell*, 1988-NMSC-026, ¶ 11, 107 N.M. 100.

97.    Defendants' misrepresentations or material omissions are of a kind that tended to deceive, and which did deceive, consumers.

98.    Defendants have violated the UPA by engaging in the unfair and deceptive practices set forth above and which violates New Mexico law.

99.    In particular, Defendants marketed, labeled, advertised, and sold the Product in a deceptive, false and misleading manner since the express representations on the product were false and tended to deceive any consumer, including inducing consumers to believe that the Product could actually be used to brew 100 cups of coffee.

100.    Defendant Albertson's knowingly sold the product to consumers even though, upon information and belief, it either knew or should have known of the deceptive labeling on the Product and/or it failed to have a reasonable set of policies or procedures in place to verify that the

products it sells are not deceptively advertised or labeled.

101.    Defendant Albertson's also failed to or refused to have reasonable policies or procedures in place to prevent a supplier from continuing to supply or ship products to Albertson's for sale when the supplier was on notice of a claim of false labeling or false advertising.

102.    This standard may be called a "should have been aware" standard that the representations on or about the Product were false, deceptive, or misleading.

103.    Defendant Albertson's, through the exercise of reasonable diligence, including maintaining policies and procedures to prevent a supplier from continuing to supply or ship products to Albertson's for sale when the supplier was on notice of a claim of false labeling or false advertising, should have been aware that the representations on or about the Product were false, deceptive, or misleading.

104.    Defendant Alberton's benefits economically by sales of the Product.

105.    Defendant United Intertrade benefits economically by sales of the Product.

106.    Plaintiff and Class Members have been aggrieved by Defendants' unfair and deceptive practices in violation of UPA, in that they purchased and consumed Defendants' deceptively labeled and marketed Product.

107.    Defendants have deceived reasonable consumers, like Plaintiffs and the Class, into believing the Product was something it was not.

108.    A section of the UPA, NMSA 1978, § 57-12-10(E), specifically permits the filing of a class action on behalf of injured consumers, who may seek their actual damages.

109.    Section 57-12-2(D)(14) bans the use of misrepresentation of goods where the seller uses "exaggeration, innuendo or ambiguity" as to a material fact or failing to state a material fact if doing so deceives or tends to deceive the consumer.

110.    Here, the Product's labeling tends to deceive about the actual volume of coffee that the Product will produce if the consumer follows the instructions on the can.

111.    Plaintiff and the Class suffered damages including benefit-of-the-bargain damages.

112.    Defendants are liable for all attorneys' fees and costs of the action pursuant to NMSA 1978, § 57-12-10(C).

113.    Because Defendant United Intertrade acted with actual notice that its labeling or advertising were likely to deceive consumers, Defendant United Intertrade engaged in willful violations of the UPA and is thus liable for treble damages in favor of the Class.

114.    Because Defendant Albertson's continued to sell the Product after it was on actual notice that the Product bears false labeling, it is liable therefore.

115.    Plaintiffs believe that under Fed. R. Civ. P. 15 they likely should seek leave to file "supplemental" claims, which mean claims that are based upon facts existing after the filing of the initial complaint. Plaintiffs will timely file such a motion.

116.    Because Defendants' conduct is likely to harm and confuse consumers in the marketplace, the Court should enjoin Defendants from their ongoing deceptive acts, errors, or omissions pursuant to NMSA 1978, § 57-12-10(A).

117.    Because the balance of the equities favors consumers over the unlawful acts of Defendants, Plaintiff and the Class seek a preliminary injunction to prevent Defendants from issuing or continuing to issue the deceptive Product.

118.    Plaintiff and the Class seek all available remedies, damages and awards resulting from Defendants' violations of the UPA.

## SECOND CAUSE OF ACTION:

## BREACH OF EXPRESS OR IMPLIED CONTRACT

119.    Defendants breached the express or implied "bargain" between consumers and sellers of the Product by selling a product that was not as it was advertised.

120.    Defendants made or make offers to sell the Product to New Mexico consumers and one material term of that express or implied "deal" is that the Product will do what it claims to do – make 100 cups of brewed coffee.

121.    In New Mexico, a contract is formed with an offer, acceptance of the offer, and mutual assent to the terms.

122.    In New Mexico, the sale of grocery items is a "contract for the present sale of goods" under Article II of the Uniform Commercial Code.

123.    The accuracy of the printed statements on a can or label are without doubt material terms of such a sale and contract.

124.    Each consumer who walks into an Albertson's and buys a can of the Product has entered into a contractual agreement with both the retailer and the manufacturer.

125.    Here, there is a contract, a breach of that contract, which caused actual damages to Consumers.

126.    Here the damages are the difference between the value paid by the consumer for the product and what the product is "actually worth" in terms of what it could actually brew.

127.    The laboratory report shows that the Product is up to 43% less in value in terms of volume that as it is advertised.

128.    Each consumer who buys the Product from Defendants (directly or indirectly) has a "deal" or agreement by which the Product is in reality as it is represented to be.

129.    The consumers pay the stated price for the Product in order to take the Product

home for use, and thus each such consumer is holding up "his or her" end of the deal.

130.    Defendants breach the contract by selling a Product that is substantially and materially less than it claims to be and/or "other" than what it claims to be.

131.    For such a breach, Defendants are liable in amounts to be determined at trial.

WHEREFORE the Plaintiff and the Class pray that they be allowed to present its case to the Court or to a jury to award:

A.  Actual damages;

B.  Treble damages;

C.  Injunctive relief;

D.  Punitive damages;

E.  An award of attorneys' fees and costs;

F.  Any other relief this court deems just and proper.

Respectfully submitted,

LAW OFFICE OF DAVID C. KRAMER, LLC

/s/ David C. Kramer_____
David C. Kramer
P.O. Box 4662
Albuquerque, NM 87196
505-545-8105 (voice)
david.c.kramer@swcp.com

_/s/ Michael L. Aaronson_____
Michael L. Aaronson
Aaronson Law Firm
7362 Remcon Cir.
El Paso, TX  79912
mikeaaronson@gmail.com
Pro Hac Vice application pending

Attorneys for Plaintiff and the Class

<u>Certificate of Service:</u>

I hereby certify that the foregoing pleading was filed on March 19, 2021 in the Court's CM/ECF electronic filing system which caused all parties connected to this case to be served electronically. I also served a copy of the foregoing pleading on the following parties via U.S. Mail or e-mail on the same date:


Mark C. Walker
MWalker@Dickinsonwright.com
*Counsel for Defendant United Intertrade, Inc.*

Michael E. Jacobs
mjacobs@hinklelawfirm.com
*Counsel for Defendant Albertson's LLC*



___*/s/ David C. Kramer*_____

# AARONSON LAW FIRM

7362 Remcon Circle
El Paso, Texas
79912

*mikeaaronson@gmail.com*

915.533.0110
FAX 915.533.7227

### CONFIDENTIAL SETTLEMENT COMMUNICATION PURSUANT TO RULE 408, *FEDERAL RULES OF EVIDENCE*, AND ALL OTHER APPLICABLE PRIVILEGES

August 10, 2020

Mr. Burhan Ajouz – Founder, Owner, and Managing Director
United Intertrade, Inc.
1139 Brittmoore Rd #2,
Houston, TX 77043

**RE:**       **Notice of Violation of New Mexico's Unfair Practices Act (UPA) and Breach of Express Warranty**

**SUBJECT:**    **False, Deceptive, and Misleading Labeling: Café Don Pedro 100% Arabica American Roast Ground Coffee (Net Wt. 11.5 Oz)**

Mr. Ajouz,

      Pursuant to the New Mexico Unfair Practices Act ("NMUPA"), New Mexico Annotated Statutes §§ 57-12-1 – 57-12-26, we hereby notify you, United Intertrade Inc. and/or its subsidiaries or affiliates (collectively "United Intertrade") that you have violated NMUPA's provisions and breached various express warranties. Specifically, you have violated NMUPA § 57-12-3 by manufacturing, marketing, promoting, labeling, advertising, and selling Café Don Pedro 100% Arabica American Roast Ground Coffee (Net Wt. 11.5 Oz) (hereafter "the Product") using unfair and deceptive trade practices in derision of New Mexico law.

      An image of the Product is attached and incorporated hereto as **EXHIBIT A** below for reference.

      As set forth above, United Intertrade sells (or has sold), through various retailers throughout the United States, a coffee cannister containing ground coffee named "Café Don Pedro 100% Arabica American Roast Ground Coffee (Net Wt. 11.5 Oz)"; i.e. the Product. The Product is advertised, marketed, and sold as containing an amount of coffee grounds capable of brewing up to 100 six-fluid-ounce cups of coffee, or servings, when in fact the contents of the Product are not capable of brewing anywhere close to 100 servings. Expert testing of the Product, attached and incorporated hereto as **EXHIBIT B**, establishes that the actual servings contained in the Product were between 57 and 76 and therefore between 43 and 24 servings

Exhibit A

were missing from the Product (where both tablespoon and cup units stipulated by the label brewing instructions were tested). This means that consumers of the Product, including Plaintiff, were cheated out of between 43% and 24% of the servings they paid for based on the advertising, marketing, and labeling of the Product.

We represent consumer Timothy W. Morris ("Plaintiff") who purchased the Product in reliance upon the deceptive and misleading representations made by United Intertrade. The Plaintiff is a natural person and resident of New Mexico. The Plaintiff suffered an economic loss through purchasing this misbranded and mislabeled Product.

United Intertrade's conduct in marketing, promoting, labeling, advertising, and selling the Product with the issues discussed above violates NMUPA § 57-12-3 because United Intertrade has used unfair or deceptive trade practices and deceived or mislead the Plaintiff as United Intertrade has represented the contents of the Product as capable of brewing 100 servings while the Product cannot honestly and legally be so represented. This is an act deemed unlawful pursuant to NMUPA § 57-12-2(D)(5), because United Intertrade has misrepresented the quantity of serving in the container sold to the consumer. Additionally, United Intertrade has violated express warranties related to the Product because it does not contain anywhere close to the promised number of servings.

Therefore, demand is hereby made, that United Intertrade agree to immediately do and complete the following:

1.     Removal of False and Misleading Content

Agree to provide notice in the advertising, labeling, packaging, marketing, promotion, selling, and labeling of the Product correcting the misstatements and misrepresentations about the Product.

2.     Corrective Advertising

Provide for a six-month, nationwide advertising campaign that fully discloses to consumers, among other things, the above misstatements. The campaign shall be subject to our review and approval, as counsel for the putative Class.

3.     Restitution to the Plaintiff Class

Pursuant to NMUPA § 57-12-10, and based on the foregoing, we hereby demand that United Intertrade reimburse a minimum of 24% of all amounts paid by any and all individuals who purchased the Product during the past four (4) years. United Intertrade shall offer the Plaintiff Class restitution in an amount equal to a minimum of 24% of the purchase price of all units sold. The restitutionary component of this case would be in addition to United Intertrade providing for payment of all costs (including costs of notice and administration of the fund) and reasonable attorney's fees.

If we cannot reach a negotiated resolution to this claim, it is our intent to file suit to protect the legal rights of Plaintiffs and a putative class of purchasers of the Product. In that event, we would seek all available remedies available under NMUPA § 57-12-10, including but not limited to recovering actual damages suffered by all purchasers of the Product and attorney fees, and all other applicable common laws and statutory remedies. Furthermore, unless we can reach an amicable resolution, we will be forced to seek an injunction against retailers selling the deceptive Product and also file a breach of contract action against the retailers seeking benefit of the bargain damages pursuant to NMUPA § 57-12-10(A).

We hope to hear from you soon so we can try to resolve this matter and avoid expensive, protracted litigation. If you have any questions regarding this notice and demand, please contact the undersigned attorney.

Kind thanks for your time and attention,

By: /s/ Michael Aaronson
Michael Aaronson, Esq.

In association with counsel licensed in New Mexico.

Exhibit A
Note that the photos were later corrected

# EXHIBIT A



# Mountain Grown Premium Coffee

| Filtered cold water in 6 oz. cup | Café Don Pedro Ground Coffee |
| --- | --- |
| 1 cup water | 1 tablespoon coffee |
| 10 cups water | 10 tablespoons coffee |
| 12 cups water | 12 tablespoons coffee |
| 30 cups water | 1-1/2 cups coffee |
| 45 cups water | 2-1/2 cups coffee |
| Makes up to 4 gallons or 100 cups | |

- Measure desired amount of water in coffee maker.
- Use one full tablespoon of Café Don Pedro to each six ounce (6 oz) cup of filtered water
- Adjust these measurements to suit your taste.
- For best results avoid chlorinated water.
- STIR BREWED COFFEE BEFORE SERVING.
- Refrigerate ground coffee after opening.

DRIP-PERK GRIND
FOR ALL COFFEE MAKERS

 RECYCLE

# EXHIBIT B

[remainder of page deliberately blank]

# BIOGEN
Laboratory Developments, LLC

36740 E. Historic Columbia River Highway  Corbett, OR 97019

(888) 9 BIOGEN • (503) 705.0666 • Email: admin@biogenlabdevelopments.com

The Offices of Howard Rubinstein
4000 N. Ocean Drive East Tower
Suite 201
Riviera Beach, FL 33404
Howard Rubinstein
(832) 715.2788 Phone
(561) 688.0630 Fax

Report Date: July 28, 2020
Report No.: 200720001HR
Received Date: July 20, 2020
Received Conditions: Ambient
Storage Conditions: Ambient
Analysis: Label Claim Verification
PO No.: NA

## CERTIFICATE OF ANALYSIS

### Results: 1 Serving Prep

| Sample No: | Sample Description | Servings Claimed per Can | Actual Servings Measured | Actual Servings Missing | Overall Servings Missing |
|---|---|---|---|---|---|
| 200720001-HR | Café Don Pedro 100% Arabica Coffee American Roast, Stone Ground & Low Acid Ground Coffee 11.5oz | 100 | 57 | 43 | 43% |

Analysis based on prep instructions printed as 1 tablespoon ground coffee per serving.

### Results: 30 Serving Prep

| Sample No: | Sample Description | Servings Claimed per Can | Actual Servings Measured | Actual Servings Missing | Overall Servings Missing |
|---|---|---|---|---|---|
| 200720001-HR | Café Don Pedro 100% Arabica Coffee American Roast, Stone Ground & Low Acid Ground Coffee 11.5oz | 100 | 76 | 24 | 24% |

Analysis based on prep instructions printed as 1½ cup ground coffee per 30 servings.

### Results: 45 Serving Prep

| Sample No: | Sample Description | Servings Claimed per Can | Actual Servings Measured | Actual Servings Missing | Overall Servings Missing |
|---|---|---|---|---|---|
| 200720001-HR | Café Don Pedro 100% Arabica Coffee American Roast, Stone Ground & Low Acid Ground Coffee 11.5oz | 100 | 69 | 31 | 31% |

Analysis based on prep instructions printed as 2½ cup ground coffee per 45 servings.

Confidential Analysis Page 1 of 2

# BIOGEN
Laboratory Developments, LLC

36740 E. Historic Columbia River Highway  Corbett, OR 97019

(888) 9 BIOGEN • (503) 705.0666 • Email: admin@biogenlabdevelopments.com

**The Offices of Howard Rubinstein**
**4000 N. Ocean Drive East Tower**
**Suite 201**
**Riviera Beach, FL 33404**
**Howard Rubinstein**
(832) 715.2788 Phone
(561) 688.0630 Fax

**Report Date: July 28, 2020**
**Report No.: 200720001HR**
**Received Date: July 20, 2020**
**Received Conditions: Ambient**
**Storage Conditions: Ambient**
**Analysis: Label Claim Verification**
**PO No.: NA**

## CERTIFICATE OF ANALYSIS

**Analysis Summary:**

A retail can of Café Don Pedro American Roast ground coffee was examined to verify the total servings of coffee a consumer could produce following the instructions printed on the retail package. The serving weight measurement was taken in triplicate to determine the average weight per 1 tablespoon (1 serving), and per 1 cup. The average weight of 1 cup was used to calculate the amount of coffee used per 1½ cups ground coffee (30 servings) and per 2½ cups (45 servings) per the prep instructions on the can. The total contents were measured to determine the maximum number of servings each can could produce.

The Café Don Pedro coffee can tested resulted in a 43% deficiency in the total number of servings per can when following the single serving prep instructions. This suggests there was an error with how the retail prep instructions were verified and calculated. As a result, the can was missing a substantial number of the servings of coffee that a consumer is expected to yield, per the retail label.

The coffee can tested following the optional prep of 1½ cup coffee per 30 servings resulted in a 24% deficiency in the total number of servings per can, and the 2½ cup coffee instructions for 45 servings resulted in a 31% shortage. It should be noted that the instructions specified 30 and 45 cups of "water" specifically per respective brewing instruction. One cup of water is equivalent to 8 fluid ounces and a serving of brewed coffee is listed as 6 fluid ounces on the can. The brewing instruction however further defined the use of 1 full tablespoon "to each 6 ounce cup of filtered water". When 8 ounces of water is used for brewing coffee, a net 6 ounces of brewed coffee is expected to remain after a portion of the water is lost to a combination of evaporation during brewing and absorption into the ground coffee itself.

The net weight of the contents was accurately listed on each can; however the amount of product needed to meet the servings claimed on the package label fell short following all the brewing instructions listed. The data suggests the manufacturer did not take the weight of the ground coffee per serving into account when creating prep instructions based on volume measurements.

Approved by:

Nidal Kahl, Director

*Test results pertain only to the samples tested with reasonable uncertainty. This report shall not be reproduced except in its entirety, without written approval from BLD. Samples may be discarded after 30 days of receipt.*

**Confidential Analysis Page 2 of 2**

Search          Account 👤 (/my-account)

0 items - $0.00

## OUR STORY

Home (https://donpedrocoffee.com) >> Our Story

**5** / **5** ( **3** votes )

## Our Story

United Intertrade, Inc (UNICO) has been roasting coffee and creating high quality coffee products for over 35 years. We are a family owned and operated business with a portfolio of specialty coffee products including Don Pedro Coffee, and Mitalena Coffee. We are passionate about the mighty coffee bean and have been providing our loyal coffee customers the best tasting and highest quality coffees from around the world.

We follow strict protocols in sourcing beans and in our roasting process to ensure our customers can enjoy their cup of coffee with complete peace of mind.

UNICO, is a custom order coffee facility specializing in Roasting, Blending, Flavoring, Canning, Fractional Packing, K-CUP Packaging and Private Labeling for wholesale and retail businesses.

(https://donpedrocoffee.com/)

0



Exhibit B

UNICO handles all grades of coffees including: show quality exotic coffees, organic and premium micro lots coffees, and large quantities of commercial varieties.

Our unique production facility allows us the flexibility to custom tailor a coffee packaging solutions ideally suited for any requirement.

UNICO's coffee inventories include a wide variety of premium Single Origin coffee beans from all around the world including: Colombian Supremo, Kenya AA, Mexican Altura, Costa Rican Tarrazzu, Brazilian Bourbon Santos, Guatemalan Antiqua, Hawaiian Kona, Indonesian Sumatra, Jamaica Blue Mountain coffee, Tanzanian Peaberry, Ethiopian Harari and Sidamo, Honduran Marcala, Panama Boquette, Zimbabwe Salimba, Zambian Estate AA, Malawi Mapanga and others.

**Roasting**

At Unico we use specialized coffee roasters that are designed in the single batch, slow roasting, air cooling European roasting system. This traditional "old world style" roasting process has been proven to produce lower acid coffee of unmatched smoothness and aromatic quality. This is done by stripping all the layers of chaff from the beans. The result of a tedious process is perfectly roasted coffee with aroma content and superior flavor even in decaffeinated coffees. The blending of matching coffee beans produces coffee with various levels of strength and boldness.

The basic roasts by shades of color are: American roast(light), Vienna roast(deep brown), medium roast, Full City roast, Espresso Roast, French roast, Turkish roast and Italian roast.

0




®(https://donpedrocoffee.com/)

Cafe Don Pedro Single Serve Coffee Packaging Pr...



 (/products/)

**OUR COFFEES**

 (/contact-us/)

(https://donpedrocoffee.com/)

**WHOLESALE**

0



Please Inquire: (713) 827-1367

 (/our-story/)

## OUR STORY



**Ask The Master Roaster!**

# DISCOVER OUR EXCLUSIVE COFFEE VARIETY

*Free Shipping*

EXPLORE NOW (/PRODUCTS/)

 (https://donpedrocoffee.com/)

0



## QUICK LINKS

HOME (HTTPS://DONPEDROCOFFEE.COM/)

OUR STORY
(HTTPS://DONPEDROCOFFEE.COM/OUR-STORY/)

PRODUCTS
(HTTPS://DONPEDROCOFFEE.COM/PRODUCTS/)

CONTACT US
(HTTPS://DONPEDROCOFFEE.COM/CONTACT-US/)

BLOG (HTTPS://DONPEDROCOFFEE.COM/BLOG/)

## CONTACT

## CARDS ACCEPTED





(https://verify.authorize.net/anetseal/?
pid=141989d1-2833-
4d2e-85e1-
aae651dab0e8&rurl=https://donpedrocoffee.com)





0





## Brewing Instructions

**Filtered cold water**

1 cup water
10 cups water
12 cups water
30 cups water
45 cups water

**Ground Coffee**

1 tablespoon coffee
10 tablespoons
12 tablespoons
1-1/2 cups coffee
2-1/2 cups coffee

Makes up to 100 cups
Serving size: 6 fl. oz.

- Measure desired amount of water in coffee maker.
- Use one full tablespoon of Café Don Pedro to each six ounce (6 oz) cup of filtered water.
- Adjust these measurements to suit your taste.
- For best results avoid chlorinated water.
- STIR BREWED COFFEE BEFORE SERVING.
- Refrigerate ground coffee after opening.

## DRIP-PERK GRIND FOR ALL COFFEE MAKERS

RECYCLE